UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-10426-DJC |
| | ) | |
| KEVIN GOMEZ, | ) | |
| | ) | |
| Defendant. | ) | |

OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, through the undersigned Assistant United States Attorney, opposes the motion filed by the defendant requesting compassionate release from custody due to due to the COVID-19 pandemic. Doc. 82. Although sympathetic to concerns pertaining to the COVID-19 pandemic, the government submits that the defendant is not entitled to early release from custody.

First, after initially refusing the COVID-19 vaccine, the defendant has now received the first dose of the Moderna vaccine. *See* Exhibit A, vaccination record, filed under seal.

Second, while the defendant suffers from issues from his amputated leg, none of those issues subject him to a more serious risk of illness or death should he contract the coronavirus. Thus, he cannot demonstrate that "extraordinary and compelling" reasons support a sentencing reduction pursuant to 18 U.S.C. § 3582(c).

Third, as evidenced by his medical records, the defendant is receiving adequate medical care while incarcerated at FCI-Allenwood Medium.  *See* Exhibit B, latest medical visit, filed under seal. Although (like many prisons throughout the country) FCI-Allenwood had previously experienced an unfortunate outbreak of COVID-19, the current statistics reflect that the measures taken by the Bureau of Prisons ("BOP") (including vaccination) have been successful in containing and mitigating the spread of the virus. As of today's date, 438 staff are fully vaccinated and 1,846 inmates are fully

vaccinated. Also as of today's date, there are no inmates and <u>one</u> staff testing positive for COVID-19 at FCI-Allenwood Medium.

*Fourth,* even if "extraordinary and compelling reasons" did exist, the defendant has not demonstrated that he is no longer a danger to the community or that consideration of the § 3553(a) sentencing factors support his early release. The defendant was selling fentanyl and firearms, a dangerous mixture of criminal conduct that harms the community. Early release would thus present an untenable risk of harm to the community and would not be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

For all of these reasons, the defendant's motion for compassionate release should be denied.

## I.    BACKGROUND

### A.    The Defendant's Criminal Conduct and Sentence

The defendant was a fentanyl and firearms dealer who sold drugs, pistols, a rifle, and ammunition to an undercover officer. Based on his criminal conduct and criminal history, the defendant's advisory guideline sentencing range was 100-125 months. Following a sentencing hearing on November 12, 2020, the Court sentenced the defendant to 70 months imprisonment, 30% below the low-end of the advisory guideline sentencing range.

According to BOP records, the defendant is incarcerated at FCI-Allenwood Medium and has an anticipated release date of November 2, 2024 with consideration for good conduct.  He has served approximately 1 year and 11 months, less than one third, of his sentence. While in BOP custody, the defendant has had no disciplinary issues.

### B.    BOP's Response to the COVID-19 Pandemic

The COVID-19 pandemic presented an unprecedented risk to the worldwide community, including to individuals and staff at jails and prisons.  It is a highly contagious virus about which

2

little was known when it first emerged in the United States.  Thereafter, public health officials at the local, state, and national levels have continuously sought to provide guidance as to the best measures to prevent and/or limit the spread of the virus.

From the outset of the pandemic, the BOP made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control ("CDC") and the World Health Organization ("WHO").  The BOP's objective throughout the pandemic has been to implement a series of policies and procedures aggressively designed to prevent and/or mitigate the spread of COVID-19 within its facilities. With time and as health experts learn more about the virus, the BOP has continued to refine and implement additional comprehensive procedures relating to screening, testing, treatment, prevention, education and infection control. BOP's "action plan" is described in detail at *https://www.bop.gov/coronavirus/*.

### C.    The Current Situation at FCI-Allenwood Medium

There are 1,173 inmates currently incarcerated at FCI-Allenwood Medium.[1] Like many other populations (both inside and outside the jail settings), FCI-Allenwood Medium experienced COVID-19 cases during the pandemic. Fortunately, no inmates or staff at FCI-Allenwood Medium have died as a result of contracting COVID-19.[2]  Since the start of the pandemic 461 inmates at FCI-Allenwood Medium have recovered from COVID-19 and there are currently no inmates and one staff testing positive for COVID-19 at the facility.[3]

---

[1] https://www.bop.gov/locations/institutions/alm/ (last accessed October 15, 2021*).*

[2] https://www.bop.gov/coronavirus/ (last accessed October 15, 2021).

[3] *Id.*

With the continued implementation of procedures designed to contain and limit the spread of the COVID-19 virus (including the priority of inmate vaccinations, as discussed below), the situation at FCI-Allenwood Medium looks positive. This trend is reflective of BOP facilities nationwide. Of the 132,121 inmates in BOP custody across the country, today there are 261 inmates who have tested positive.[4]

### D.      The BOP Vaccination Plan

The BOP has been working diligently with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP received the COVID-19 vaccine as it became available.  As of February 8, 2021, doses of the vaccine were delivered to every BOP institution. In total, BOP has administered 232,448 doses of the COVID-19 vaccine nationwide.

## II.   APPLICABLE LEGAL FRAMEWORK

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see Dillon v. United States,* 560 U.S. 817, 824-25 (2010).  "[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed a district court's discretion to modify a sentence is an exception to [§ 3582's] general rule" barring modification.  *United States v. Cunningham,* 554 F.3d 703, 708 (7th Cir. 2009); *cf. United States v. Goodwyn,* 596 F.3d 233, 235 (4th Cir. 2010) (noting that 18 U.S.C. § 3582(b) "states that a district court may not modify a term of imprisonment once it has been imposed unless the Bureau of Prisons moves for a reduction, the Sentencing Commission

---

[4] *Id.*

4

amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so").

Section 3582(c)(1)(A) represents an exception to this general rule. The statute, adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the BOP Director. The provision was amended by Section 603(b) of the First Step Act, effective December 21, 2018. Under the statute as amended, a court may now consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner. 18 U.S.C. § 3582(c)(1)(A). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines.

### A.     The Extraordinary and Compelling Reason Requirement

Once the threshold precondition of administrative exhaustion is satisfied,[5] the court may modify a sentence only if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i).[6] The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *See United States v. Saccocia*, 2021 WL 3660814 at *6 (1st Cir., August 18, 2021) ("The Court must find that the defendant's situation constitutes the type of 'extreme hardship' that the compassionate-release statute is designed to ameliorate.).

---

[5] The defendant has satisfied the administrative exhaustion requirement.

[6] Section 3582(c)(1)(A)(ii) provides other bases by which a defendant may be eligible for compassionate release; however, none of these factors are applicable in this case.

Pursuant to 28 U.S.C. § 944(t),[7] Congress directed the Sentencing Commission to formulate what constitutes "extraordinary and compelling reasons," and the Sentencing Commission has done so. The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 Application Note 1. These include an assessment of the defendant's medical condition, age, family circumstances, and other reasons as detailed in Application Note 1. *Id.*

Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG § 1B1.13(2). And, the court must consider whether the § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Gates,* 2020 WL 2747851, at *2 (D. Mass. May 27, 2020) (Sorokin, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp.3d 1185, 1188 (D.N.M. 2019) (citations omitted).

**B.     COVID-19 and Compassionate Release**

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The same goes for the emergence of the more recent Delta variant. The guideline policy statement describes specific

---

[7]   Section 994(t) provides that "[t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. "[T] he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own").

The CDC most recently updated its list of risk factors on August 20, 2021.[8] It reports a list of conditions that can make you "more likely to get severely ill from COVID-19." The defendant asserts no conditions that make him more vulnerable to serious illness or death if were to contact the coronavirus.

### C.  Defendant's Vaccination.

The defendant initially refused the COVID-19 vaccine when it was offered to him on May 13, 2021. On September 15, 2021, a few weeks before he filed his motion for compassionate release, the defendant received the first dose of the vaccine. *See* Exhibit A. At the defendant's medical visit on September 16, 2021, COVID precautions were reviewed with him and he was congratulated on receiving his first dose, a step towards self-care. *See* Exhibit B.

---

[8]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 25, 2021).

Whatever medical complications a COVID-19 infection theoretically *might* have caused the defendant have been outweighed by the fact that he has now proceeding towards full vaccination.  Further, the defendant does appear to have ever tested positive for COVID-19 despite being incarcerated since the start of the pandemic.[9]

> **1.    Receipt of the Moderna Vaccine Has Significantly Reduced the Risk of Infection, thus also Reducing the Risk of Future Medical Complications from the COVID-19 Virus**

The FDA approved the Moderna vaccine for emergency use based on its conclusion that, in extensive testing, the vaccine was over 94% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with risk of serious illness due to COVID-19.[10]  Since the FDA's emergency use authorization, various studies have continued to confirm the efficacy of the vaccines, including against variants.[11]

---

[9] The government has reviewed 173 pages of the defendant's medical records received from the Bureau of Prisons.

[10]    https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/moderna-covid-19-vaccine-frequently-asked-questions    (last    accessed October 15, 2021).

[11]    https://www.who.int/news-room/feature-stories/detail/the-moderna-covid-19-mrna-1273-vaccine-what-you-need-to-know?gclid=CjwKCAjw1JeJBhB9EiwAV612y41nxaa6sDsg89a7iPWzaibdOreSjZGURICCGwmhxdj7k8cX4ocpTBoCodcQAvD_BwE ("The Moderna vaccine has been shown to have an efficacy of approximately 94.1 per cent …Based on the evidence so far, the new variants of SARS-CoV-2, including the B.1.1.7 and the 501Y.V2, do not alter the effectiveness of the Moderna mRNA vaccine.") (updated June 25, 2021) (last accessed October 15, 2021);

https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html?s_cid=11514:moderna%20vaccine%20delta%20variant:sem.ga:p:RG:GM:gen:PTN:FY21 ("Vaccines in the US are highly effective, including against the Delta variant") (updated August 19, 2021) (last accessed October 15, 2021)

A study issued on April 28 and reported by the CDC found that the efficacy rate of the Pfizer and Moderna vaccines was the same (approximately 94%) in the population over the age of 65 as in the population of adults as a whole, showing the effectiveness of the vaccines even in a group that is particularly vulnerable to severe outcomes.[12]

Even more significantly, thus far, the vaccines are proving remarkably effective not just in limiting infection, but in fulfilling their most important purpose: limiting severe disease and death.[13]   Thus, by receiving the first dose of the vaccine, the defendant has provided effective "self-care" against the virus, thereby negating any claim of an "extraordinary and compelling" reason warranting compassionate release. *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced.  Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus.  On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release.").[14]   Drawing upon the available scientific data, Judge Hillman recently

---

[12] https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm7018e1_w (last accessed October 15, 2021).

[13]    https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last accessed October 15, 2021).

[14] Other courts throughout the country overwhelmingly have reached a similar conclusion. *See, e.g.*, *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021); *United States v. Smith*, 2021 WL 1890770, at *3-6 (E.D. Cal. May 11, 2021); *United States v. Jackson*, 2021 WL 1927506, at *3 (N.D. Cal. May 13, 2021); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb.

concluded, "[T]here is no question now that the Pfizer or Moderna vaccine has dramatically reduced [the defendant]'s risk of contracting COVID-19 or experiencing a severe course of illness if he should contract the virus." *United States v. Garcia,* 2021 WL 1890290 (D. Mass. May 11, 2021).

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge. For now, the CDC and WHO have both affirmed that the vaccines are effective against the most recent Delta variant. *Supra*, fn12.   If the scientific consensus shifts or new vaccine-resistant variants emerge, nothing prevents the defendant from filing another motion for compassionate release at that time.  At this time, however, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, the risk of serious illness from COVID-19.

---

16, 2021); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Stewart*, 2021 WL 1011041, at *2 (D. Haw. Mar. 16, 2021); *United States v. Decano*, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021); *United States v. Gordon*, 2021 WL 2094470, at *3 (D. Haw. May 24, 2021); *United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. Robinson*, 2021 WL 1723542, at *4 (W.D. La. Apr. 30, 2021); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021); *United States v. Johnson*, 2021 WL 1550460, at *5 (D. Minn. Apr. 20, 2021); *United States v. Burks*, 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021); *United States v. Gomez-Vega*, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb.18, 2021); *United States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Roe*, 2021 WL 1711296, at *2 (S.D. Ohio Apr. 30, 2021); *United States v. Burks*, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021); *United States v. Stiver*, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

**D.      The § 3553(a) Factors Support The Defendant's Continued Incarceration**

Even if the defendant provided an extraordinary or compelling reason for relase, he must still demonstrate that his proposed release is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This, in turn, requires consideration of the factors expressed in 18 U.S.C. § 3553(a)—including, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to provide the defendant with needed . . . medical care or other correctional treatment; the applicable guidelines; and pertinent Sentencing Commission policy statements. *See* USSG § 1B1.13.

Upon consideration of these factors, the scale tips overwhelmingly in favor of the defendant's continued incarceration. As detailed above, the defendant was engaged in the dangerous and harmful business of drug and firearm dealing. The defendant also had a criminal history of drug dealing, assault and battery, breaking and entering, and receiving a stolen motor vehicle, placing him in criminal history category V.

The Court sentenced the defendant to 30% below the low-end of the advisory guideline sentencing range. At the time of sentencing, the Court was well aware of the COVID-19 pandemic as the whole world had been living through its effects for over 6 months. The conditions of confinement and nature of punishment were well understood by the time the Court sentenced the defendant to this below guideline sentence.

Further, the defendant is receiving medical care for his amputated leg and is receiving assistance for moving through the facility. *See* Exhibit B. Lastly, the defendant is receiving substance abuse treatment through RDAP. The fact that his conviction for a firearm offense

precludes a sentence reduction after his completion of substance abuse treatment is not a compelling or extraordinary reason to reduce his sentence. Thus, no sentencing reduction is warranted.

### III.   CONCLUSION

The COVID-19 pandemic is an unprecedented public health emergency that has caused great concern throughout the world.  It does not, however, require the release of all federal inmates. The defendant has received the first dose of his vaccine months after his initial refusal. As such, any risk of serious medical complication from the COVID-19 virus has been mitigated and will be drastically mitigated once he is fully vaccinated. As evidenced by the defendant's medical records, BOP is capable of providing him with appropriate medical care. Finally, the § 3553(a) factors that were determinative in the Court's decision to impose a sentence of 70 months remain fully in force and warrant the defendant's continued incarceration.

For all of the foregoing reasons, the defendant's motion for compassionate release should be denied.

> Respectfully submitted,
>
> NATHANIEL R. MENDELL
> Acting United States Attorney
>
> By:   /s/ Philip C. Cheng
>       Philip C. Cheng
>       Assistant United States Attorney

Date: October 15, 2021

CERTIFICATE OF SERVICE

       I hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  A copy of this document will be caused to be sent, by first class mail, to Kevin Gomez at the following address:

    KEVIN GOMEZ, #01970-138
    FCI ALLENWOOD MEDIUM
    FEDERAL CORRECTIONAL INSTITUTION
    P.O. BOX 2000
    WHITE DEER, PA  17887

                                    */s/ Philip C. Cheng*
                                      Philip C. Cheng
                                      Assistant United States Attorney

Date:  October 15, 2021